FILED
United States Court of Appeals
Tenth Circuit

December 22, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RONALD D. CATRELL,

      Defendant-Appellant.

No. 14-3044

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:11-CR-20125-CM-1)**

---

Thomas H. Johnson, Petefish, Immel, Heeb & Hird, LLP, Lawrence, KS, for Defendant-Appellant.

Barry R. Grissom, United States Attorney, and James A. Brown, Assistant United States Attorney, Topeka, KS, for Plaintiff-Appellee.

---

Before **McHUGH**, **McKAY**, and **BALDOCK**, Circuit Judges.[*]

---

**BALDOCK**, Circuit Judge.

      Defendant Ronald Catrell appeals his sentence, alleging: (1) a portion of the

---

[*] After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

sentence illegally exceeded a statutory maximum, and (2) the Government vindictively insisted on a plea agreement recommending 132 months in prison. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Although we find no prosecutorial vindictiveness here, we must reverse and remand in order for the district court to correct its imposition of an illegal sentence.

In late 2011, the Government filed an information in the District of Kansas charging Defendant with various fraud-related crimes. The information was filed with the understanding that Defendant would plead guilty. Defendant, however, fled the jurisdiction after posting bond and was only returned to Kansas after authorities arrested him in South Carolina in July 2012. He then entered a different, binding plea agreement with the Government under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Per this agreement, Defendant would receive 120 months in prison for the following crimes: bank fraud (18 U.S.C. § 1344), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1957), and aggravated identity theft (18 U.S.C. § 1028A). Defendant thereafter pled guilty to these four felony counts.

Before sentencing, however, and after a lengthy hearing, the district court allowed Defendant to withdraw this guilty plea. The Government then procured an indictment against Defendant with over a dozen new criminal counts. Within weeks, Defendant entered into a new Rule 11(c)(1)(C) agreement with the Government. This time, Defendant would plead guilty to the same four crimes as before and receive 132 months in prison—a 12-month increase from the prior plea. To reach

this total, the parties agreed to a 24-month sentence for aggravated identity theft, to run consecutively with concurrent 108-month sentences for bank fraud, wire fraud, and money laundering.

Defendant subsequently pled guilty and affirmed, after extensive questioning, that he was doing so of his own free will and pursuant to the Rule 11(c)(1)(C) agreement. He also stated that although he was surprised and disappointed with the 12-month increase, he was nevertheless requesting the 132-month sentence outlined in the agreement; in addition, he acknowledged he would have no opportunity to ask for a lower sentence once the court accepted the agreement. Indeed, at the change of plea hearing alone, he affirmed his acquiescence to the 132-month sentence at least *eight* separate times. In light of the unexpected indictment, Defendant explained, the plea agreement "is the best approach to this—to resolve this matter."

Later, at sentencing, Defendant opined in allocution that the new indictment was "punishment for withdrawing the [earlier guilty] plea" and that "I feel like there's no choice but to accept" the new plea agreement. Upon questioning, however, he again reiterated that he nevertheless willingly entered the agreement and willingly pled guilty, fully aware that his sentence would be 132 months. The court then accepted the agreement and sentenced Defendant to 132 months. In crafting the sentence, though, the court sentenced Defendant to 54 months for aggravated identity theft (as opposed to the 24 months set out by the parties) and 78 months for the other three crimes (as opposed to the 108 months set out by the parties). Thus, while the

total sentence was identical to that put forth in the Rule 11(c)(1)(C) agreement, the math used to achieve that total was different. Neither party objected to the court's alternate method. Defendant now appeals his aggravated identity theft sentence. But first, we must address his claim of prosecutorial vindictiveness.

Defendant argues the Government vindictively punished him for withdrawing his initial guilty plea by adding 12 months to his sentence in the final Rule 11(c)(1)(C) agreement. At minimum, he argues, the Government should have to rebut a presumption of vindictiveness on remand. We disagree. Although the parties dispute the applicable standard of review, binding precedent forecloses Defendant's argument even under *de novo* review. Simply put, "in the 'give-and-take' of plea bargaining, there is *no such element of punishment or retaliation* so long as the accused is free to accept or reject the prosecution's offer." United States v. Lampley, 127 F.3d 1231, 1245 (10th Cir. 1997) (alteration omitted) (emphasis added) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)).[1]

Nothing in the record indicates Defendant was forced to go along with the 132-month sentence. True, Defendant mentioned at sentencing that "I feel like there's no choice but to accept" the new plea agreement. The district court immediately pressed Defendant on this statement, though, and he reiterated—in line

---

[1] Defendant asserts Bordenkircher is factually distinguishable, but that misses the point; we are not relying on Bordenkircher for its precise facts, but rather for its directly applicable statement of law regarding plea bargaining.

4

with his numerous comments at the extremely thorough change-of-plea hearing—that he had willingly entered the agreement and willingly pled guilty. We see no evidence in the record that indicates otherwise, so there can be no error. See United States v. Sarracino, 340 F.3d 1148, 1179 (10th Cir. 2003) ("Sarracino made the tactical choice to reject the plea bargain and proceed to trial. The government had probable cause to seek the reindictment of Sarracino for second degree murder based on the facts . . . and did so. . . . 'A claim of vindictive prosecution cannot insulate the defendant from the lawful consequences of his tactical choices.'" (citations omitted)); United States v. Berger, 251 F.3d 894, 910 (10th Cir. 2001) ("[T]he fact that the prosecutor informed the defendants that if they withdrew from their plea agreements they would lose the benefit of the agreed-upon prison terms does not give rise to an inference of vindictiveness . . . .").

We now turn to Defendant's primary contention, which is that the district court erred by sentencing him to 54 months for aggravated identity theft. The Government concedes error on this point, and rightly so. Aggravated identity theft under 18 U.S.C. § 1028A requires a "term of imprisonment of 2 years"—no more, no less. See id. § 1028A(a)(1); United States v. Dooley, 688 F.3d 318, 319 (7th Cir. 2012) ("Section 1028A has an unusual penalty provision. Every conviction under that statute is punished by exactly two years in prison."). The parties differ, however, in what they think we should do about this error.

After initially moving for remand so the error could be corrected, the

5

Government now asserts we could affirm under plain error review because the district court would have been required to sentence Defendant to 132 months under *any* method of calculation. But in United States v. Gonzalez-Huerta, 403 F.3d 727 (10th Cir. 2005) (en banc), we stated otherwise on this very issue. Per Gonzalez-Huerta, we view a prison sentence exceeding a statutory maximum as an "illegal sentence" that "trigger[s] *per se*, reversible, plain error." Id. at 739 n.10 (emphasis added); see also United States v. Barwig, 568 F.3d 852, 858 (10th Cir. 2009) ("A sentence that exceeds the statutory maximum is an illegal sentence . . . and an illegal sentence is per se reversible even under plain error review."). Going even further, in United States v. Moyer, 282 F.3d 1311 (10th Cir. 2002), we held "the imposition of an illegal sentence constitutes plain error even if the sentence favors the defendant." Id. at 1319. If an illegal sentence *favoring* a defendant is plain error, then surely the sentence here qualifies.

The Government fails to confront the above case law. Rather, citing cases expounding on plain error more generally, it insists plain error review allows us to affirm if a defendant could not have received a lower sentence absent the error. The Government also cites a case where the Eighth Circuit declined to find plain error in a similar circumstance. See United States v. Bossany, 678 F.3d 603, 606 (8th Cir. 2012) ("Mr. Bossany contends for the first time on appeal that his 90-month sentence for conspiracy exceeds the five-year (60-month) statutory maximum . . . and we agree. . . . Though the error is plain, we conclude that it did not affect Mr.

6

Bossany's substantial rights . . . . Regardless of the error, Mr. Bossany would have been sentenced to 90 months in prison . . . ."). As reasonable as this approach may be, however, we must follow a different path. Per our precedent, the district court clearly gave Defendant an "illegal sentence" for aggravated identity theft, and we must remand for this plain error to be corrected. See United States v. Brooks, 751 F.3d 1204, 1209 (10th Cir. 2014) ("Absent *en banc* consideration, we generally 'cannot overturn the decision of another panel of this court.'" (citation omitted)).

But that does not end our discussion, for now we must determine what—if any—instructions to give the district court on remand. Defendant asks us to instruct the court to correct its error on the aggravated identity theft count without touching the other counts. If we were to do this, Defendant would receive 24 months for aggravated identity theft and 102 months total, rather than 132 months. Our "sentencing package doctrine" counsels in the other direction, however. Under this doctrine, a "sentencing package . . . takes into account all counts upon which the defendant has been convicted. When one of these counts is set aside or vacated, the district court is free to reconsider the sentencing package de novo . . . ." Ward v. Williams, 240 F.3d 1238, 1243 (10th Cir. 2001) (quoting United States v. Smith, 116 F.3d 857, 859 (10th Cir. 1997)). Defendant puts forth several arguments for why this doctrine is inapplicable; none are persuasive.

First, Defendant argues the sentencing package doctrine only applies when a *conviction* has been vacated, as opposed to just a sentence. Certainly, we have

7

offhandedly mentioned that the doctrine applies "[w]hen one of these *counts* is set aside . . . ." Id. (emphasis added) (quoting Smith, 116 F.3d at 859). This language is best viewed as *descriptive* rather than *prescriptive*, however; indeed, in Ward itself, after describing the sentencing package doctrine in these words, we applied the doctrine to a situation where a state court vacated and corrected its "illegal sentence" *without* vacating any underlying convictions. Id. at 1243–44. Thus, Ward counsels directly against Defendant on this argument.

Second, Defendant argues the sentencing package doctrine only applies to sentences crafted pursuant to the Sentencing Guidelines, as opposed to plea agreements under Rule 11(c)(1)(C). This argument fails for precisely the same reason as the first. That is, our statement in Ward that a "sentence *under the U.S. Sentencing Guidelines* constitutes a sentencing package," id. at 1243 (emphasis added) (quoting Smith, 116 F.3d at 859), is again clearly descriptive rather than prescriptive because in that very case we approved of the doctrine's use in a New Mexico *state* court proceeding from 1995 that almost certainly was not conducted pursuant to the federal Guidelines. Id. at 1243–44. Moreover, Defendant cites no case law supporting his argument that the sentencing package doctrine should not apply to a sentence doled out pursuant to a Rule 11(c)(1)(C) agreement.

Finally, Defendant contends the "essential difference" between his situation and Ward is that he was sentenced pursuant to a contract (*i.e.* the plea agreement) that should be interpreted against the drafter of the contract (*i.e.* the Government).

8

And per the contract, Defendant asserts, the Government should have appealed the sentences for the three non-aggravated identity theft counts if it was dissatisfied. By failing to do so, Defendant argues, the Government waived any right to have these sentences revisited on remand. In an apparent effort to deny that he would receive a windfall under this view, Defendant contends, *inter alia*, that the agreement *did* "explicitly recognize[]" the possibility of a sentence below 132 months.

This latter assertion is utterly without merit. Defendant's Rule 11(c)(1)(C) plea agreement explicitly "propose[d] . . . a total term of imprisonment of 132 months," Exhibit A, Aple's Br. at 4–5, and this proposal bound the court once it accepted the plea agreement. See Fed. R. Crim. P. 11(c)(1)(C). In addition, the 132-month total was affirmed by Defendant himself nearly a dozen times at his change-of-plea and sentencing hearings. Even on appeal Defendant cannot keep his story straight; rather, he contradictorily acknowledges elsewhere in his briefs that the plea agreement "recommended" a sentence of 132 months and that he "reasonably understood . . . he would be sentenced to 132 months." Indeed, his entire vindictiveness argument is based on the fact that the Government insisted on 132 months in the new plea agreement.[2] Defendant can in no way prevail on this issue.

_____

[2] Even if we ignored Defendant's numerous admissions, his sole argument on this point is baseless. Defendant contends explicit authorization for a lower sentence came from the waiver section of the plea agreement, which states that he still had the right to appeal any above-Guidelines departure by the district court. As odd as this language may be, it in no way authorizes the court to reject the parties' unequivocal

(continued...)

9

Furthermore, Defendant's assertion that the Government is not entitled to re-sentencing on contractual grounds does not affect the sentencing packaging doctrine, which focuses on allowing the *district court* to resentence in order to carry out *its* original intent, regardless of the parties' machinations.  See Ward, 240 F.3d at 1243 (emphasizing "the importance of allowing district courts to resentence in order to carry out [their] original sentencing intent" (quoting United States v. Hicks, 146 F.3d 1198, 1202 (10th Cir. 1998))).  In the end, we will not force the court to disregard its original intent and the binding plea deal.[3]  The court is free on remand to resentence on all counts in accordance with the agreement.

REVERSED and REMANDED.

---

[2](...continued)
sentence recommendation from a few paragraphs earlier, which, again, "binds the court once the court accepts the plea agreement."  Fed. R. Crim. P. 11(c)(1)(C).

[3] We also note the irony of Defendant's arguing that we should penalize the Government for failing to object to the sentence below while simultaneously arguing that we should remand even though *he* failed to object to the sentence below.